**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| CELETHA CHATMAN, | |
| Plaintiff, | |
| v. | Case No. 20-cv-05759 |
| | Judge Mary M. Rowland |
| MIRAMED REVENUE GROUP, LLC, | |
| Defendant. | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Celetha Chatman filed this case against MiraMed Revenue Group, LLC alleging violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, and the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692. For the reasons stated below, Defendant's motion for summary judgment [38] is denied.

## SUMMARY JUDGMENT STANDARD

Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The substantive law controls which facts are material. *Id*. After a "properly supported motion for summary judgment is made, the adverse party must set forth specific facts showing that there is a genuine issue for trial." *Id*. at 250 (internal quotations omitted).

1

The Court "consider[s] all of the evidence in the record in the light most favorable to the non-moving party, and [] draw[s] all reasonable inferences from that evidence in favor of the party opposing summary judgment." *Skiba v. Ill. Cent. R.R. Co.*, 884 F.3d 708, 717 (7th Cir. 2018) (internal citation and quotations omitted). The Court "must refrain from making credibility determinations or weighing evidence." *Viamedia, Inc. v. Comcast Corp.*, 951 F.3d 429, 467 (7th Cir. 2020) (*citing Anderson*, 477 U.S. at 255). In ruling on summary judgment, the Court gives the non-moving party "the benefit of reasonable inferences from the evidence, but not speculative inferences in [its] favor." *White v. City of Chi.*, 829 F.3d 837, 841 (7th Cir. 2016) (internal citations omitted). "The controlling question is whether a reasonable trier of fact could find in favor of the non-moving party on the evidence submitted in support of and opposition to the motion for summary judgment." *Id.* (citation omitted).

## BACKGROUND[1]

Chatman, a resident of Illinois, is a "consumer" as defined by the FDCPA. DSOF ¶ 1. MiraMed is an Illinois limited liability company that holds a collection agency license from the state of Illinois. *Id.* at ¶¶ 2-3. In this case MiraMed qualifies as a "debt collector" as defined by the FDCPA. *Id.* at ¶ 4. Chatman's Account arose from an unpaid medical bill for medical services rendered to Chatman by Community First Medical Center (the "Hospital") on or about February 29, 2020 after a car accident

---

[1] The facts herein are taken from the parties' Local Rule 56.1 statements (Dkt. 40 "DSOF" and Dkt. 45 "PSOF") and are undisputed unless otherwise noted.

involving Chatman. *Id*. Chatman was billed for the balance owed after insurance payments were credited to her account. *Id*.

As part of Chatman's consent to treat and financial responsibility paperwork, on February 29, 2020 she signed a Consent And Agreement to Conditions of Treatment ("Consent"). *Id*. at ¶¶ 5, 37. Based on the Consent, Chatman consented to receive telephone calls and/or text messages that were sent using an automated telephone dialing system or with an artificial or pre-recorded voice. *Id*. at ¶ 6. Based on the Consent Provision, MiraMed, as the Hospital's agent, was allowed to rely on the Consent Provision. *Id*. at ¶ 7. The Hospital's policy requires that entries are made to its account notes to memorialize communications with patients regarding each patient account owed to Hospital. *Id*. at ¶ 8.

Chatman failed to pay the Hospital for the medical services rendered and her Account is in default. *Id*. at ¶ 11. She claims her medical debt should have been paid by a third party—the driver who caused her accident. *Id*. at ¶ 36. The Hospital called Chatman on April 10, 2020, April 23, 2020, and June 4, 2020. PSOF ¶ 38.

Thereafter the Hospital engaged the services of MiraMed to collect Chatman's outstanding debt. DSOF at ¶ 12. In August 2020, MiraMed received Chatman's account, and MiraMed called Chatman. *Id*. at ¶¶ 13, 29. Before calling her, MiraMed did not send Chatman a letter containing her validation rights pursuant to 15 U.S.C. § 1692g(a). *Id*. at ¶ 14. In addition, a calling campaign was created for Chatman (MiraMed says this was an error; Chatman disputes that characterization). *Id*. at ¶ 31.

According to MiraMed's records for Chatman's account, starting on August 7, 2020, the first phone call attempt was made. *Id*. at ¶ 34. In total, eight calls were placed, and one text message was sent to the phone number on file for her account. None of the calls were answered by a human being because the CUBS system (MiraMed's account management software) detected a voice mail greeting and left a pre-recorded message, known as an "unattended message." *Id*.

Chatman claims that Miramed violated Section 1692g of the FDCPA (Compl. ¶¶ 29-30) and violated the TCPA. (*Id*. ¶ 37).

## ANALYSIS

### I. FDCPA Claim - Standing

This case presents a unique posture: plaintiff Chatman contends that she does not have standing for her FDCPA claim; Miramed insists she does. The Court agrees with Chatman that she lacks standing for her FDCPA claim.[2]

"To ensure that what is before them is in fact a case or controversy, federal courts require that plaintiffs have 'standing' to sue. That means a plaintiff must have suffered an injury in fact that is traceable to the defendant's conduct and redressable by a favorable judicial decision." *Markakos v. Medicredit, Inc.*, 997 F.3d 778, 780 (7th

---

[2] Section 1692g of the FDCPA states in part, "[w]ithin five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall…send the consumer a written notice containing (1) the amount of the debt… (3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;…[and] If the consumer notifies the debt collector in writing within the thirty-day period…that the debt, or any portion thereof, is disputed…the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or a copy of a judgment…"15 U.S.C.A. § 1692g.

2021) (citation omitted).[3] Under Seventh Circuit law, "a breach of the [FDCPA] does not, by itself, cause an injury in fact." *Id.* at 779; *see also Bazile v. Fin. Sys. of Green Bay, Inc.*, 983 F.3d 274, 279 (7th Cir. 2020) ("a plaintiff must do more than allege an FDCPA violation to establish standing"). An FDCPA violation that does not injure a plaintiff "in any concrete way, tangible or intangible. . . . [is] impermissible under Article III" and must be "dismissed for lack of standing." *Larkin v. Fin. Sys. of Green Bay, Inc.*, 982 F.3d 1060, 1066-67 (7th Cir. 2020). The Seventh Circuit has "repeatedly recognized a fundamental point: When a debt collector fails to inform a debtor of his statutory rights, then the debtor has suffered a concrete injury only if it impairs the debtor's ability to use that information for a substantive purpose that the [FDCPA] statute envisioned." *Wadsworth v. Kross, Lieberman & Stone, Inc.*, 12 F.4th 665, 668 (7th Cir. 2021) (cleaned up). As the Seventh Circuit explained in *Bazile*:

> The FDCPA requires collectors to inform debtors of the amount owed to protect debtors from collection abuses that impinge their choices about how to respond to their debts and to the collection attempt. If the required information is omitted without hindering those choices or some other substantive interest the statute protects, there is no harm done— no concrete injury-in-fact.

983 F.3d at 280 (citations omitted). Here, MiraMed argues that there is no issue of material fact that MiraMed did not send Chatman the statutorily required notice, and "based on the record before the court, it is likely that had [Chatman] received her

---

[3] "Plaintiffs must maintain their personal interest in the dispute at all stages of litigation. A plaintiff must demonstrate standing with the manner and degree of evidence required at the successive stages of the litigation." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2208, 210 L. Ed. 2d 568 (2021) (cleaned up). Since this case is at the summary judgment stage, evidence is needed to support Chatman's standing. MiraMed as "[t]he party invoking federal jurisdiction bears the burden of establishing these elements [of standing]." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561, 112 S. Ct. 2130, 2136, 119 L. Ed. 2d 351 (1992).

FDCPA notice, she would have disputed the debt especially since she vehemently claims her medical debt should have been paid by a third party (the driver who caused her accident)." (Dkt. 39 at 7). MiraMed believes its failure to send the required notice combined with Chatman's dispute about the debt supports standing. But MiraMed fails to cite any evidence that the lack of notice altered Chatman's response to her debts in any way. MiraMed's evidence shows Chatman has not paid the debt. (DSOF ¶ 11). *See Wadsworth*, 12 F.4th at 668-69 ("federal courts may entertain FDCPA claims only when the plaintiff suffers a concrete harm that [s]he wouldn't have incurred had the debt collector complied with the Act.").[4]

*Lavallee v. Med-1 Sols., LLC,* 932 F.3d 1049 (7th Cir. 2019), relied on by MiraMed, misses the mark because there, although plaintiff did not dispute the debt, what was significant to the injury-in-fact analysis was the fact that "Lavallee was already a defendant in a collection suit brought by Med-1 when the statutory disclosure violation occurred." *Id*. at 1053. She therefore could have "halt[ed] the collection litigation" (*id.*) if she had been provided the required disclosures. *See Larkin*, 982 F.3d at 1065 ("*crucially* [in *Lavallee*], the plaintiff [] suffered an actual harm from the statutory violation: the debt collector had already sued her in state court to collect the debt.") (emphasis added). Chatman was not being sued in state court for this debt. And Chatman "testified that she was harmed by MiraMed's collection activities, e.g., calling her, and 'in particular by, 'interrupting her work, making me call them,' as

---

[4] Chatman cites to *TransUnion LLC*, in which the Supreme Court explained that a risk of future harm is an injury in fact only in the context of a claim for injunctive relief. 141 S. Ct. at 2210-11. The Court does not understand MiraMed's argument to be that Chatman has a risk of future harm. In any event Chatman is not seeking injunctive relief.

well as having to call them back to figure out what they were calling about." (Dkt. 46 at 2). At her deposition, Chatman explained the anxiety she felt from having to re-live the car accident. (Chatman Dep. (Dkt. 40-3), pp. 20-21)). These are not damages that create injuries-in-fact for purposes of standing under the FDCPA. *See Markakos*, 997 F.3d at 781 (complaints of being confused, aggravated, and infuriated are "not injuries in fact" for purposes of the FDCPA); *Wadsworth*, 12 F.4th at 668 ("anxiety and embarrassment are not injuries in fact"); *see also Giannini v. Fin. Recovery Servs., Inc.*, 2021 WL 164839, at *3 (N.D. Ill. Jan. 19, 2021) ("without accompanying detrimental action, a plaintiff's confusion, annoyance, and intimidation do not amount to concrete harm for standing purposes.").[5] In sum, in this case, it has not been established that the statutory violation "harmed [Chatman] 'or 'presented an appreciable risk of harm to the underlying concrete interest that Congress sought to protect.'" *Larkin*, 982 F.3d at 1066 (citations omitted).

Because Chatman lacks standing to pursue her FDCPA claim, that claim is dismissed without prejudice. *See Markakos*, 997 F.3d at 782 n.1 (dismissal is without prejudice when plaintiff lacks standing). MiraMed's summary judgment motion on this claim is denied as moot.

---

[5] MiraMed refers to harm from "Defendant invading [Chatman's] privacy when Defendant made phone call attempts to reach [Chatman] when Defendant allegedly was not permitted to call [her]." DSOF ¶ 35. This case is brought under Section 1692g of the FDCPA only. (Compl. ¶¶ 29-30). Chatman does not allege or argue that her private information was disclosed to third parties. And generally invoking Chatman's "privacy" is not sufficient in this context. *See Lueck v. Bureaus, Inc.*, 2021 WL 4264368 (N.D. Ill. Sept. 20, 2021); *Avina v. Radius Glob. Sols., LLC*, 2021 WL 6752293, at *4 (N.D. Ill. Nov. 4, 2021).

**II. TCPA Claim**

Chatman alleges that MiraMed's calls to her violated the TCPA, were annoying to her, invaded her privacy interests, and temporarily blocked use of her cellular telephone line for other potential callers. (*See* Compl. ¶¶ 37-41). The TCPA prohibits "mak[ing] any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice ... to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call." 47 U.S.C. § 227(b)(1)(A)(iii). The TCPA allows "[a] person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations" to bring a private lawsuit and recover actual or statutory damages. 47 U.S.C. § 227(c)(5). "The TCPA is a remedial statute that we must liberally construe in favor of consumer protection." *Physicians Healthsource, Inc. v. A-S Medication Sols., LLC*, 950 F.3d 959, 967 (7th Cir. 2020).[6]

**A. Whether Chatman Can Revoke Her Consent**

Chatman agrees that she signed the Hospital's Consent. (DSOF ¶ 5). MiraMed argues that Chatman cannot revoke her consent. However "[i]n the TCPA context, once consent is given, it is effective until revoked." *Husain v. Bank of Am., N.A.*, 2020 WL 777293, at *7 (N.D. Ill. Feb. 18, 2020). "Consumers may revoke consent at any

---

[6] The parties agree that Chatman has Article III standing to pursue her TCPA claim. *See Gadelhak v. AT&T Servs., Inc.*, 950 F.3d 458, 461 (7th Cir. 2020), cert. denied, 141 S. Ct. 2552, 209 L. Ed. 2d 568 (2021).

time as long as the revocation clearly expresses a desire not to receive further [communication]." *Advantage Healthcare, Ltd. v. DNA Diagnostics Ctr., Inc.*, 2019 WL 3216026, at *3 (N.D. Ill. July 17, 2019) (cleaned up).[7] *See Payton v. Kale Realty, LLC*, 164 F. Supp. 3d 1050, 1065 (N.D. Ill. 2016) ("[C]onsent under the TCPA does not have an expiration date and is considered effective until revoked."). However, "[c]onsumers may revoke consent at any time and through any reasonable means," as long as the revocation "clearly expresses a desire not to receive further messages." (*In re Rules & Regs. Implementing the Tel. Consumer Prot. Act of 1991* ("2015 FCC Order"), at 7965, ¶ 2, 7996, ¶ 63; *see also Dolemba v. Kelly Servs., Inc.*, 2017 WL 429572, at *3 (N.D. Ill. Jan. 31, 2017). *Michel v. Credit Prot. Ass'n L.P.*, 2017 WL 3620809, at *3 (N.D. Ill. Aug. 23, 2017) ("Once consent is given, it is effective until it is revoked.").

MiraMed argues that the 2015 FCC (Federal Communications Commission) Order was set aside by the D.C. Circuit in *ACA Int'l v. Fed. Commc'ns Comm'n*, 885 F.3d 687 (D.C. Cir. 2018). The 2015 FCC Order stated, "[w]e [] find the most reasonable interpretation of consent is to allow consumers to revoke consent if they decide they no longer wish to receive voice calls or texts." MiraMed relies on the D.C. Circuit's statement in *ACA* that "[n]othing in the Commission's order [] should be understood to speak to parties' ability to agree upon revocation procedures." *Id.* at 710. However, the D.C. Circuit expressly stated that it "uph[e]ld the Commission's approach to

---

[7] MiraMed relies on out-of-circuit cases that disagree with this analysis but are not binding on this Court. (Dkt. 39 at 9-10). And *Burke v. 401 N. Wabash Venture, LLC*, 714 F.3d 501 (7th Cir. 2013), also cited by MiraMed, is not a TCPA case.

revocation of consent, under which a party may revoke her consent through any reasonable means clearly expressing a desire to receive no further messages from the caller." *Id.* at 692.

Furthermore, the Seventh Circuit advises courts should "liberally construe [the TCPA] in favor of consumer protection." *Physicians Healthsource*, 950 F.3d at 967. In And while there is some split over whether consents can be revoked, courts in this district and nationally have continued to affirm party's right to revoke consent. *See Advantage Healthcare*, 2019 WL 3216026; *see also Jackson v. First Nat'l Bank of Omaha*, 2022 WL 423440 (C.D. Cal. Jan. 18, 2022); *Higgs v. Golden Title Loans, LLC*, 2021 WL 6332357 (W.D. Tenn. Oct. 27, 2021). Accordingly the Court finds that Chatman was permitted to revoke her written consent.

### B. Whether Chatman Revoked Her Consent

MiraMed next argues that in contrast to the Hospital's account records showing no record of Chatman asking to revoke her consent, Chatman provides only her "self-serving" testimony. It is undisputed that the Hospital called Chatman on April 10, 2020, April 23, 2020, and June 4, 2020. PSOF ¶ 38. Chatman testified that she spoke with an agent of the Hospital, that she told them she was not responsible for the bill, that they should not contact her again; and, requested the Hospital put her on their do-not-call list. *Id.* ¶ 39. MiraMed maintains that the Hospital has no record that Chatman revoked her permission to be contacted. DSOF ¶ 9.

MiraMed objects to Chatman's testimony as "self-serving". However the Seventh Circuit has "repeatedly emphasized…the term 'self-serving' must not be used to

denigrate perfectly admissible evidence through which a party tries to present its side of the story at summary judgment." *Hill v. Tangherlini*, 724 F.3d 965, 967 (7th Cir. 2013) (citations omitted). On summary judgment the Court "constru[es] the evidence and draw[s] all reasonable inferences in favor of the nonmoving party." *Richards v. PAR, Inc.*, 954 F.3d 965, 967 (7th Cir.), cert. denied, 141 S. Ct. 670, 208 L. Ed. 2d 277 (2020). And it will not assess witness credibility or weigh Chatman's testimony against the Hospital's records or its representative's affidavit. *See Viamedia*, 951 F.3d at 467; *see also Bishop v. Air Line Pilots Ass'n Int'l*, 5 F.4th 684, 693 (7th Cir. 2021) (the court "may not make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts; these are jobs for a factfinder.") (cleaned up).

Because genuine issues of fact remain regarding whether Chatman withdrew her consent to be contacted, summary judgment is not warranted in MiraMed's favor on the TCPA claim.

## CONCLUSION

For the stated reasons, Defendant's motion for summary judgment [38] is denied. The FDCPA claim is dismissed without prejudice. Defendant's motion as to the TCPA claim is denied.

E N T E R:

Dated: March 21, 2022

_____
MARY M. ROWLAND
United States District Judge